UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| TATIA D. WHITEHEAD, | ) |
| | ) |
| Plaintiff, | ) 2:19-CV-00040-DCLC |
| | ) |
| vs. | ) |
| | ) |
| GRAND HOME FURNISHINGS, INC., | ) |
| | ) |
| Defendant | ) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court to address Defendant Grand Home Furnishing's ("Grand Home") Motion to Dismiss [Doc. 7] pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff Tatia Whitehead ("Whitehead") responded [Doc. 11]. Grand Home then replied [Doc. 15]. This matter is now ripe for resolution.

**I.    BACKGROUND**

Whitehead began working for Grand Home as a sales associate in 2010. After succeeding in that position, she indicated she would be willing to be considered for a management position. In the Fall of 2013, Grand Home offered her an assistant manager's position in its Beckley, West Virginia store. She was assigned to work for Mr. Anthony Carpenter, the store's manager. Whitehead alleged that her hiring upset Carpenter who had wanted another individual to take the assistant manager's position. She felt that he began acting "distantly" towards her and "indulged in sexist resentment" of her while she worked at the Beckley store. She alleged that Carpenter told "off-color sexually oriented jokes to other employees." [Doc. 1, ¶ 7]. She alleged that he brought a Voodoo doll to the store and led her to believe he was "using voodoo on her." [*Id.* at ¶ 8]. Whitehead alleged that Carpenter had a wooden paddle and "made sex-related comments about it

1

to female office employees" although she did not alleged he ever made such remarks to her [*Id.*]. In 2014, she alleged that Carpenter make "offensive sexist comments to and about the store's female employees" and Grand Home's vice-president did nothing to address the behavior [*Id.* at ¶ 11].

In May 2015, Carpenter spoke with a male customer of the store who was friends with Whitehead. Carpenter asked whether Whitehead had shown this customer any inappropriate photos of herself to him. He responded no and promptly told Whitehead about the exchange. Whitehead reported the incident to HR. [*Id.* at ¶ 15-16]. Shortly thereafter, Grand Home transferred Carpenter to another location and replaced him with a new store manager, Mr. Jason Carter. [*Id.* at 20]. Though she believed Carpenter's acts constituted sexual harassment, she did not file any charges of discrimination with either the EEOC or the West Virginia Human Rights Commission (WVHRC).

At this point in 2015, Whitehead alleged that "as part of the corporately created and maintained hostile work environment," Grand Home began to retaliate against her. She alleged that Carter made her "sign" several documents, that Carter did not speak to her "when she came into the manager's office to start the workday," that Carter reprimanded her without cause or justification, that Carter would call her when he was off work and demand "that she explain her store activities," and complained that she was not properly reporting customer contacts. In January 2016, Grand Home moved Whitehead's desk onto the sales floor, which Whitehead interpreted as retaliation "because of the situation with store manager Carpenter." [*Id.* at ¶ 29]. She also claimed that in February 2016, Grand Home wrote her up for not calling in sick at least 30 minutes before her regular report time. Whitehead claimed that she had texted Carter, who denied receiving any texts from her. She did not file any charges with the EEOC or the WVHRC regarding these events.

2

On February 29, 2016, Grand Home, after discussing Whitehead's job performance with her, transferred out of the assistant manager's position in Beckley to a sales associate position at its Kingsport store. Grand Home advised her that she had potential but needed to work under another manager. [*Id.* at ¶ 34]. Whitehead claimed this job transfer was in retaliation for her complaining the year earlier about Carpenter. Notwithstanding that belief, Whitehead did not file any charge with the EEOC or the WVHRC.

At the Kingsport store, she noticed that some of the assistant managers did not perform some of the duties she had performed at the Beckley store. She believed because she had to perform other tasks in Beckley, she must have been assigned those tasks in retaliation for her complaints about Carpenter. When she moved back to the Kingsport store, she became pregnant and "determined that in light of her pregnancy she needed to continue working in her reduced sales associate position in order to earn a living and keep her employee health insurance benefits…." [*Id.* at ¶ 38]. Rather than filing charges with the EEOC or the WVHRC, she continued to work as a sales associate in the Kingsport store.

White also alleged other specific acts of retaliation. First, while working in Kingsport, an assistant managers position became open. She applied for the position. Grand Home hired another female associate for the position. Whitehead alleged Grand Home's decision not to promote her and hire the other female associate was retaliatory [*Id.* at ¶ 40]. Second, Whitehead alleged that, in retaliation, Grand Home brought in Carpenter, her former manager, to help manage a single day sales event in Kingsport, Tennessee. Although she did not interact with Carpenter at all, she alleged that this made her "uncomfortable" and was a "deliberate and malicious effort to further intimidate [her] and retaliate against her as part of [Grand Home's] continuing hostile work environment." [*Id.* at ¶ 42]. Third, Whitehead alleged that in retaliation against her, Grand Home

deducted West Virginia income tax from her paycheck after she had finally established her residence in Tennessee. She did not identify the specific date these events occurred and did not file any charge with the EEOC or the WVHRC regarding them.

On September 19, 2016, Whitehead took FMLA leave in relation to her pregnancy. A day before she had exhausted her FMLA leave, on December 14, 2016, she hand-delivered her letter of resignation [*Id.* at ¶ 44]. She alleged that her resignation was "reasonable and constituted a constructive discharge." [*Id.* at 44].

Whitehead filed a Complaint with the WVHRC on February 28, 2017, alleging that she "has experienced unlawful discrimination in violation of the West Virginia Human Rights Act because of her Sex (Female) and as an act of Reprisal" for continuing actions occurring prior to February 28, 2016 [Doc. 8-1, pg. 2]. Whitehead filed a substantively identical Amended Complaint on March 13, 2017 as follows:

   A. The Complainant is a member of a protected class.
   B. Prior to February 28, 2016, the Complainant reported multiple incidents of sexual harassment to the Respondent.
   C. On February 29, 2016, the Respondent demoted the Complainant, as an act of Retaliation, for engaging in a protected activity.

[Doc. 8-2]. After the WVHRC conducted its investigation and reviewed her charge, it found no probable cause and on May 16, 2018, closed her case [Doc. 8-3]. On December 19, 2018, the EEOC adopted the findings of the WVHRC and issued Whitehead a Right to Sue letter [Doc. 8-4]. Whitehead timely filed this complaint on March 18, 2019.

In her complaint filed in this Court, she alleges that Carpenter's actions at the Beckley store constituted sex discrimination and created "a sex-based hostile work environment." [Doc. 1, pg. 1]. After making her complaints known and Carpenter was removed as her manager, Whitehead argues that the work environment turned into "a retaliation-based hostile work environment,"

including the actions Carter, her manager, took against her, her demotion and transfer to the Kingsport store, the withholding of West Virginia income tax, and Carpenter's surprise appearance on a single sales event in Kingsport after she had lodged complaints about his treatment of her. Whitehead also argues that the retaliation continued after her transfer and that her resignation was a constructive discharge.

## II. PARTIES' POSITION

Grand Home filed a Motion to Dismiss for Failure to State a Claim [Doc. 7] pursuant to Fed.R.Civ.P. 12(b)(6). It argues that Whitehead failed to exhaust administrative remedies as required, that the claims are time barred, and that any remaining allegations do not state a cause of action [Doc. 8, pg. 1]. Otherwise, Grand Home argues that this suit can only include those events which occurred within 300 days of Whitehead filing her charge with the WVHRC, that is, between May 4, 2016 and February 28, 2017. For those claims that are covered within the 300-day limitation period, Grand Home asserts that they do not state a cause of action.

Whitehead disagrees. She argues that she informed the WVHRC of the totality of the events, including the actions taken while Whitehead was working at both stores, when she sent a time line to them. She also contends that all the events enumerated in her Complaint were part of the continuing hostile work environment that naturally stemmed from the sex discrimination claim. These events also naturally led to her constructive discharge when she quit after her FMLA leave. As such, Whitehead posits that the Court should consider all the allegations in her Complaint as they were "reasonably expected to grow out of the EEOC charge." *Doan v. NSK Corp*. 97 F. App'x 555, 557 (6th Cir. 2004); [Doc. 11, pg. 15] ("[T]he corporate February 2016 demotion meeting was part of the retaliatory hostile work environment perpetrated by Grand officers *before and after* the demotion meeting and has to be considered as an episode of the continuing hostile work

environment for purposes of determining the employer's *Title VII* liability…") (emphasis in original).

III. **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) requires the Court to construe the allegations in the complaint in the light most favorable to the plaintiff and accept all the complaint's factual allegations as true. *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990). The Court must liberally construe the complaint in favor of the party opposing the motion. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). However, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and to "state a claim to relief that is plausible on its face." I*d*. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Moreover, this Court need not "'accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Ashcroft*, 556 U.S. at 678. Lastly, this Court may consider documents central to the plaintiff's claims to which the complaint refers and incorporates as exhibits. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

IV. **ANALYSIS**

Pursuant to Title VII:

> (1) A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the

> proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

42 U.S.C. § 2000e-5(e)(1). The United States Supreme Court has held that these time periods operate, essentially, as a form of statute of limitations. *See Nat'l R.R. Pass. Corp. v. Morgan*, 536 U.S. 101, 122 (2002) ("We conclude that a Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period – 180 or 300 days–set forth in 42 U.S.C. § 2000e-5(e)(1)."). In this case, Whitehead filed her charge of discrimination with the WVHRC on February 28, 2017, so her charge is subject to the 300-day limitation period. *See* 42 U.S.C. § 2000e-5(e)(1).[1] Her limitation period then would extend back to May 4, 2016.

The "unlawful employment practice" Whitehead alleged in her charge was (1) "Prior to February 28, 2016, [she] reported multiple incidents of sexual harassment to the Respondent….[and] (2) On February 29, 2016, the Respondent demoted [her] as an act of Retaliation, for engaging in protected activity." [Doc. 8-1, pg. 3]. As noted, Whitehead, however, did not filed her charge of discrimination until February 28, 2017, which is well more than 300 days after her claim of retaliation accrued. Thus, any discrete acts of discrimination Whitehead alleged that occurred more than 300 days before she filed her charge of discrimination are time barred. This would include those discrete acts she alleged in her complaint involving Carpenter and all those which occurred more than 300 days before she filed her charge with the state agency.

Whitehead argues that her claim is nevertheless timely because she alleged a retaliatory hostile work environment, that she should not be limited to just the discrete acts. There are a couple problems with her argument. First, although her complaint in this Court certainly alleged

---

[1] The West Virginia Human Rights Act is codified at W.Va.Code § 5-11-1 *et seq*.

several acts of purported retaliation, the charge of discrimination she filed with the state did not include any of those other acts. Indeed, she was quite specific that she believed her demotion on February 29, 2016, *was* the discrete act of retaliation against her, not all the other acts she pled in her Complaint.

To be sure, she is not bound to allege everything in order to preserve her Title VII retaliation cause of action. When a claimant proceeds *pro se*, courts construe the specific charges as well as all "claims that are reasonably related to or grow out of the factual allegations in the EEOC charge." *Id*. (citing *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006). "When facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Younis*, 610 F.3d at 362 (quoting *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998)).

With that in mind, Whitehead alleged she reported acts of sexual harassment and that Grand Home demoted her in retaliation for those reports. She made no charge of retaliation for anything else. Are these additional allegations of retaliation reasonably related to or grow out of her claim that Grand Home demoted her in retaliation for her complaining about Carpenter? Not at all. Her charge directly relates to her demotion, not her failure to be promoted, not Carpenter showing up for a sales event, not Grand Home withholding West Virginia income tax from her paycheck. In fact, the Court finds it to be unreasonable to assume that the agency's investigation into Grand Home's single, isolated act of demoting her would spawn an investigation into other unrelated and seemingly innocuous acts.

To be clear, Whitehead did not charge Grand Home with retaliation when it promoted another female sales associate for assistant manager. She did not charge Grand Home with retaliation when it sent her former manager, Mr. Carpenter, to a single sales event in Kingsport.

8

She did not charge retaliation as a result of Grand Home mistakenly withholding West Virginia income tax from her paycheck, something it had been doing for some time when Whitehead worked in West Virginia. And, of course, she made no mention that her working conditions were so bad that they compelled her resignation. These are the acts she now complains were retaliatory. But there is nothing in her initial or amended charge of discrimination that would lead either the state agency or the EEOC to broaden the investigation into these accusations and investigate them accordingly.

Whitehead claims that she presented the full facts to the WVHRC and that she "could not control what the HRC and then the EEOC chose to include in her administrative charges." But Whitehead signed the charge and certified that "she [had] read the foregoing complaint and knows the content thereof." [Doc. 8-2]. Moreover, while she may have provided a time line to the state agency prior to her filing her charge, she acknowledged that this document was not a part of her charge. A "charge" must be made "in writing under oath or affirmation." 42 U.S.C. § 2000e-5(b). Whitehead also does not contend that this timeline met the requirements of a "charge" as required by 29 C.F.R. § 1626.8.[2] Her time line was not a part of her charge of discrimination. In fact, even after amending her charge two weeks later, Whitehead did not add any other factual allegations, like those she discussed here, to her charge.

---

[2] A charge should contain, among other things, 1) the full name, address, and telephone number of the person making the charge; 2) the full name and address of the person against whom the charge is made; 3) a clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices; 4) if known, the approximate number of employees of the prospective defendant employer or members of the prospective defendant labor organization; and 5) a statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State agency charged with the enforcement of fair employment practice laws and, if so, the date of such commencement and the name of the agency. 29 C.F.R. § 1626.8.

More importantly, none of these isolated events (even the demotion she alleged in her charge of discrimination) would cause an investigation into a hostile work environment, whether "sex-based" or "retaliation-based." Alleging discrete acts of discrimination do not establish a hostile work environment for purposes of satisfying the exhaustion requirement. In *Younis*, the Sixth Circuit grabbled with this issue. *Younis v. Pinnacle Airlines, Inc*., 610 F.3d 359, 362 (6th Cir. 2010). Younis filed an EEOC charge but did not allege a claim of hostile work environment. Instead, he identified multiple discrete acts of alleged discrimination. The Sixth Circuit noted that to establish a claim of hostile work environment, Younis must present evidence of harassment that "unreasonably interfered with his work performance and created an objectively intimidating, hostile, or offensive work environment." *Younis,* 610 F.3d at 362 (quotations and citations omitted). He had not done that.

The Sixth Circuit Court had to address whether including discrete acts in the EEOC charge would be sufficient to establish a hostile work environment. It held that "the inclusion in an EEOC charge of a discrete act or acts, standing alone, is insufficient to establish a hostile-work-environment claim for purposes of exhaustion." *Id*. It went on to hold that charging discrete acts of discrimination do not support a subsequent, uncharged claim of hostile work environment "unless the allegations in the complaint can be reasonably inferred from the facts alleged in the charge." *Id*. (citations omitted); *see also Jones v. City of Franklin*, 309 F. App'x 938, 943-44 (6th Cir. 2009)("No decision in this circuit has held that EEOC charges regarding discrete acts of discrimination are alone sufficient to put the EEOC on notice of a hostile-work-environment claim.").

That is what Whitehead is asking this Court to do with both of her hostile work environment claims. She did not charge either at the state agency but wants the Court to find that she exhausted

her administrative remedies. She has not. Moreover, her accusations contained in her complaint cannot be reasonably inferred from the facts alleged in her charge. They are conclusory and so unspecific that they are insufficient to establish a hostile work environment claim for purposes of satisfying the exhaustion requirement.

Whitehead also argues that her charge of discrimination is timely because she alleged a broader retaliatory hostile work environment and that the other specific acts of retaliation occurred within the 300-day period of limitations. She correctly argued that if "an act contributing to the claim" occurred within the 300-day limitation period, the Court may consider "the entire time period of the hostile environment[.]" *Id.* But she did not allege any of these acts that occurred within the 300-day limitation period to the state agency. Thus, her first problem is, as just noted, a failure to exhaust her administrative remedies.

But she also faces a much larger problem and that is none of these acts state a claim of retaliation. To succeed on a claim for Title VII retaliation, Whitehead must show

> (1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to the defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.

*Russell v. Univ. of Toledo*, 537 F.3d 596, 609 (6th Cir. 2008)(citation omitted). Whitehead alleged the following specific acts of retaliation in her complaint in this court: (1) Grand Home demoted her on February 29, 2016; (2) Grand Home denied her a promotion, selecting another female sales associate for the position; (3) Grand Home sent her former manager, Mr. Carpenter, to a single sales event at the Kingsport store in retaliation against her; and (4) Grand Home withheld West Virginia state income tax from her paycheck when she was working in Tennessee.

First, her demotion occurred outside the 300-day period of limitation. Second, on the failure to promote claim, she has failed to show a causal connection or any "evidence of retaliatory animus…." *Walcott v. City of Cleveland*, 123 F.App'x 171, 178 (6th Cir. 2005)(citing *Hafford v. Seidner*, 183 F.3d 506, 516 (6th Cir. 1999)). She has not even alleged temporal proximity. *Id.* (Temporal proximity alone, without additional evidence of a retaliatory animus, will not suffice to support a finding of a causal connection"). Third, Grand Home sending Carpenter to a sales event in Kingsport where he did not even interact with Whitehead is neither an adverse employment action nor did it subject her to severe or pervasive retaliatory harassment. Fourth, the same is true for the mistakenly withholding from her paycheck West Virginia state income tax. Whitehead worked in West Virginia at the Beckley store for years. She complained about Carpenter when she worked in West Virginia. Grand Home did not start withholding West Virginia income tax from her check because she complained about Carpenter. It was withholding those taxes because Whitehead was working in West Virginia. That it continued to wrongfully withhold them for a time after she started working in Kingsport is not an adverse employment action nor severe or pervasive retaliatory harassment. It corrected its mistake.

Finally, Whitehead alleged that Grand Home constructively discharged her. She did not allege that to the state agency so this claim has not been exhausted. But even if she had, she has failed to state a claim for constructive discharge. "A constructive discharge occurs when "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Tchankpa v. Ascena Retail Grp., Inc.*, No. 19-3291, 2020 WL 1071041, at *5 (6th Cir. Mar. 6, 2020). The employee must show that "the employer … deliberately create[d] intolerable working conditions, as perceived by a reasonable person, with the intention of forcing the employee to quit and the employee must actually quit." *Moore v. KUKA*

*Welding Systems & Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir. 1999). "The bar for proving constructive discharge is higher than that for a hostile work environment claim, as creation of a hostile work environment is a necessary predicate to a hostile-environment constructive discharge case." *Cooper v. Jackson-Madison County General Hosp. Dist.*, 742 F.Supp.2d 941, 957 (W.D. Tenn. 2010) (quoting *Pennsylvania State Police v. Suders*, 542 U.S. 129, 149 (2004)) (internal quotation marks omitted). In this case, Whitehead has not met this standard for constructive discharge. For the reasons already discussed, none of the events, which Whitehead alleged occurred within 300-days of filing her state charge of discrimination, created such intolerable working conditions that objectively speaking, would force her to quit. Quite the contrary is true. Whitehead continued to work for Grand Home until she quit on December 14, 2016, not because of any purported intolerable work conditions but after she had exhausted her FMLA leave.

## V. CONCLUSION

As stated above, Whitehead's claims for sex/gender discrimination, hostile work environment, sex-based or retaliatory, age discrimination, and constructive discharge are **DISMISSED** with prejudice. A separate order dismissing this case shall enter.

SO ORDERED:


s/ Clifton L. Corker
United States District Judge